IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DATA DISTRIBUTION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRER AFFILIATES, INC., et al.,<br><br>Defendants. | Civil No. 12-4878 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Stephen F. Roth, Esq.
Alexander Solo, Esq.
Lerner, David, Littenberg, Krumholz & Mentlik, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Attorneys for Plaintiff Data Distribution Technologies LLC

Michael P. Sandonato, Esq.
Jason Dorsky, Esq.
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas
New York, NY 10104-3800
Attorneys for Defendant Prudential Financial, Inc.

John J. Murphy, III, Esq.
Stradley, Ronon, Stevens & Young, LLP
Libertyview
457 Haddonfield Road Suite 100
Cherry Hill, NJ 08002-2223
Attorney for Defendant Prudential Financial, Inc.

Christopher H. Strate, Esq.
James June-Ho Kang, Esq.
David E. Delorenzi, Esq.
Gibbons, PC
One Gateway Center
Newark, NJ 07102-5310
Attorneys for Defendant Brer Affiliates Inc.

**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

Plaintiff Data Distribution Technologies LLC ("DDT") brought this action against Defendants BRER Affiliates, Inc., ("BRER")[1] and Prudential Financial, Inc., ("Prudential") alleging infringement of U.S. Patent No. 6,529,908 ("'908 Patent"), which is titled "Web-Updated Database With Record Distribution By Email" and which DDT owns by assignment.

Defendants filed a joint motion to dismiss [Docket Item 35] asserting that the '908 Patent is ineligible for patent protection under 35 U.S.C. § 101 because it is directed at an abstract idea. The principal issues are whether the Court can assess invalidity under § 101 before formal claim construction, and, if so, whether the '908 Patent is, in fact, ineligible for patent protection according to the abstractness test articulated in Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014). For the reasons discussed herein, while Defendants persuasively argued that the '908 Patent is ineligible, the Court will deny Defendants' motion without prejudice. At this procedural posture, the Court cannot hold, based on clear and convincing evidence, that there is no plausible construction of

---

[1] BRER was formerly known as Prudential Real Estate Affiliates, Inc.

the '908 Patent's claims that would satisfy the abstractness test. Defendants may resubmit their abstractness arguments at a later date, when there is a more complete record before the Court.

## II. BACKGROUND

### A. Factual Background

#### 1. The '908 Patent

The '908 Patent was filed on May 28, 1998 and issued on March 4, 2003. ('908 Patent [Docket Item 29-1] at [22]; Am. Compl. ¶ 5.) DDT owns this patent by assignment and, on March 6, 2013, DDT sent notices of infringement to Defendants. (Am. Compl. ¶¶ 6-7.)

The '908 Patent describes "[a] remotely updatable database system method and computer readable medium" that "includes a user interface, a database of information records, a database manager, and a message server." ('908 Patent at [57].) The user interface communicates with subscriber systems to receive user input, associate records with users, amend records in response to user input, and send messages regarding the records. (Id.) Computer readable codes direct the computer to perform the method. (Id.) The invention "addresses the need for immediate access to database records and the need to notify users of changes to database records." (Id. col. 1 ll. 46-48.) It

"provide[s] real estate agents access to real estate information . . . ." (Id. col. 8 ll. 35-36.) Subscribers use the system to produce and update building information records, and then the patented system sends messages, which include building records. (Id. col. 8 ll. 41-44.) "[T]he invention is applicable whenever a dynamic database is to be disseminated down to a regular user group, on a frequent basis." (Id. col. 1 ll. 56-58.)

The invention remedies inefficiencies including: "real time limitations associated with the Internet," "time lag," "a relatively large amount of time" required for "the transfer of relatively large files to a user's browser," and "frustrati[on] especially if the user is attempting to provide information . . . while the customer or client is waiting." (Id. col. 1 ll. 12-32.)

The system uses a simple mail transfer protocol, which "allows the database system to send a message containing any type of file," "allows users to receive and accumulate messages at a predefined message server and to retrieve such messages at any time or at their discretion," and "allows a user to selectively review messages received over a period of time." (Id. col. 6 ll. 43-51.) "[T]he use of the simple mail transfer protocol gives the database system the ability to target all

users or as few as a single user, each with a unique message." (Id. col. 6 ll. 52-54.)

Claim 22 describes "[a] method of maintaining and distributing database information," which includes "communicating with at least one subscriber system to receive user input . . ."; "maintaining a database of information records"; "maintaining user records in said database and linking said user records with said information records"; "controlling said database such that each information record is associated with at least one user . . ."; "amending said information records in response to user input . . ."; "serving said message . . . to said at least one user associated with said information record." (Id. col. 26 ll. 1-19.)

The '908 Patent's "technology . . . is adaptable to any number of software platforms." (Id. col. 23 ll. 49-50.) The '908 Patent does not explain how a software platform would be programmed.

**2. Defendants' Alleged Conduct**

Plaintiff alleges that Defendant Prudential previously operated and Defendant BRER currently operates an online real estate system ("Prudential System") that maintains records about real estate properties. (Am. Compl. ¶ 10.) The Prudential System allows potential buyers to create profiles and to conduct

searches, which are saved in a database. (Id. ¶¶ 11-12.) The Prudential System emails potential buyers if a new real estate listing matches their profiles or their searches. (Id. ¶ 13.) It also permits users to make and save notes regarding listings. (Id. ¶ 14.)

Plaintiff alleges that the Prudential System performs the patented method of maintaining and distributing database information, including communicating with systems to receive user input, maintaining user records, sending messages with information relating to users' records, and amending information records in response to user input. (Id. ¶ 15.)

Plaintiff alleges the Prudential System directly infringes the '908 Patent by maintaining, updating, and emailing real estate information corresponding to buyers' profiles and saved searches. (Id. ¶ 16.)

Plaintiff also alleges indirect patent infringement because Defendants encouraged potential buyers to violate the '908 Patent, including claim 22 specifically, by instructing users to create profiles, save searches, add comments, and sign up for email alerts. (Id. ¶ 21.)

Plaintiff alleges that Defendants caused irreparable harm, their infringement is willful and deliberate, and this case is exceptional. (Id. ¶¶ 23-24.)

Plaintiff seeks an order adjudging Defendants to have infringed the '908 Patent, a permanent injunction, damages, and costs, while in this motion the Defendants seek a declaration that the '908 Patent, including its 100 claims, is directed at an abstract idea and therefore is not patentable under § 101.

**B. Jurisdiction**

The Court has original jurisdiction pursuant to 28 U.S.C. § 1338(a).

**C. Procedural History**

After Defendants filed their motion [Docket Item 35], Plaintiff filed a letter [Docket Item 38] asking the Court to adjourn the motion to dismiss as premature and improper. Defendants responded via letter [Docket Item 39] that their motion was proper and meritorious and asked the Court to consider the two letters as the parties' respective opposition and reply briefs. The Court informed counsel that it would "adjudicate this motion on the merits as filed. If it is premature or otherwise meritless, then I will deny the motion . . . ." [Docket Item 40 at 1.]

The Court originally scheduled oral argument for January 31, 2014. On December 6, 2013, the Supreme Court granted certiorari in Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 734 (2013), to address the question of "[w]hether claims to

computer-implemented inventions-including claims to systems and machines, processes, and items of manufacture-are directed to patent-eligible subject matter within the meaning of 35 U.S.C. § 101 . . . .” Petition for Writ of Certiorari, Alice, 2013 WL 4768483, at *i (No. 13-298). Plaintiff asked the Court to adjourn the oral argument pending the Supreme Court’s decision in Alice. [Docket Item 49.] The Court granted Plaintiff’s request and directed the parties to submit supplemental briefs discussing Alice’s import after the Supreme Court’s decision. [Docket Item 52 at 6-7.]

The Court’s Order staying adjudication of the motion also noted that “a petition for certiorari has been filed in Ultramercial, Inc. v. Hulu, LLC, 722 F.3d 1335, 1342 (Fed. Cir. 2013),” and that, “[i]f the Supreme Court grants certiorari, it may clarify the circumstances under which a district court can adjudicate subject matter eligibility at the pleading stage.” [Docket Item 52 at 5-6.] The Court directed that, if the Supreme Court granted certiorari in Ultramercial, then the parties’ supplemental briefs should also discuss that case.

The Supreme Court issued Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), on June 19, 2014. The Supreme Court granted certiorari in Ultramercial on June 30, 2014, vacated the judgment, and remanded the case to the Federal

Circuit. Because there was no substantive opinion, the vacating of Ultramercial did not impact the briefing schedule.

The parties submitted supplemental briefs [Docket Items 63 & 65], and the Court held oral argument on August 11, 2014.

**D. Parties' Arguments**

**1. Original Briefing**

Defendants argue that: the Amended Complaint should be dismissed because the '908 Patent covers an abstract idea; the '908 Patent's use of a computer to implement the abstract idea does not render it eligible for protection; the '908 Patent "is directed to nothing more scientific or technical than the abstract idea of sending an email message to users when changes in the database are made" and "does not describe how a computer might be programmed to carry-out the supposed invention," (Def. Br. at 3); "once the generic computer jargon is stripped away, all that remains is an abstract idea that could be carried-out with paper, pen and human thoughts and motions," (Def. Br. at 12); a 12(b)(6) motion is the proper procedural posture for determining whether the patent is ineligible; and the '908 Patent fails both the machine and transformation prongs of the machine-or-transformation test.

In opposition [Docket Item 41], Plaintiff asserts that: Defendants' motion is premature and meritless; "[t]he '908

Patent includes 30 pages of figures, 12 pages of written description, and 100 claims of various scope that, together, describe in detail a computer system that is specifically programmed to perform useful functions," (Pl. Opp'n at 2); the '908 Patent is a specific invention related to the computer science field, not an abstract idea implemented on a general purpose computer; the '908 Patent describes exemplary algorithms, software, and hardware; Defendants' motion circumvents the Local Patent Rules by skipping the claim construction process; the Court can only find invalidity under § 101 if Defendants show by clear and convincing evidence that the only plausible construction renders the claimed subject matter ineligible; factual issues preclude determination of the '908 Patent's validity at this procedural stage before claim construction; the factual disputes "need to be resolved with an assistance of an expert, or an individual with an appropriate level of skill in the art," (Pl. Opp'n at 9); a human could not perform the patented system's tasks because the '908 Patent specifically enables the sending of messages containing multiple records; and the '908 Patent satisfies the machine prong of the machine-or-transformation test.

**2. Post-Alice Briefing**

Defendants argue that Alice supports their motion because the Supreme Court held that the Alice patents were directed to an abstract idea, that a generic computer cannot transform an ineligible abstract idea into a patent-eligible invention, and that elements such as data storage unit or data processing system cannot salvage a claim. Defendants also noted that Plaintiff relied extensively on the Federal Circuit's Ultramercial decision in its opposition brief and the Supreme Court vacated that decision. Defendants assert that the '908 Patent's claims are at least as expansive as those before the Supreme Court in Alice, if not more so because the claims in Alice recited "shadow credit records" and "shadow debit records." Furthermore, Defendants assert that the '908 Patent recites generic computer elements without meaningful limitations.

In response, Plaintiff argues that the Supreme Court's Alice decision supports the '908 Patent's eligibility because the '908 Patent's claims are directed to a nonabstract technological improvement in the art of computer science. Plaintiff also argues that Defendants' motion is premature because the Court has not yet conducted claim construction. Plaintiff notes that the Court must assess the '908 Patent's

eligibility based on its claims, not Defendants' reworded version in which Defendants "stripped away" key language. The '908 Patent's inventor was not attempting to monopolize a broad abstract idea, which was the Supreme Court's primary concern in Alice, and, instead, the inventor claimed a specific and narrow technological improvement related to database management and electronic mail transfer protocol.[2]

## III. STANDARD OF REVIEW

A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (quotation omitted).

---

[2] Plaintiff and Defendants also speculate about the import of the Supreme Court's Ultramercial decision. The entire Ultramercial opinion states: "On petition for writ of certiorari . . . Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Federal Circuit for further consideration in light of [Alice]." WildTangent, Inc. v. Ultramercial, LLC, 134 S. Ct. 2870 (2012). Because there was no discussion or analysis, the Court will not infer any meaning and will simply avoid relying on the Federal Circuit's vacated Ultramercial decision.

"A patent shall be presumed valid . . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). In determining the § 101 eligibility of the '908 Patent, "claims must be considered as a whole." Diamond v. Diehr, 450 U.S. 175, 188 (1981). "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003).

## IV. ANALYSIS

### A. Claim Construction Is Not Mandatory, But Is Advisable Here

While claim construction is not mandatory, the Court finds that it is advisable under the circumstances of this case and at this procedural posture.

#### 1. Claim Construction Is Not Required

"[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273. (Fed. Cir. 2012).

Where appropriate, district courts have adjudicated subject matter eligibility before claim construction. See, e.g., DietGoal Innovations LLC v. Bravo Media LLC, Civ. 13-8391, ---

F. Supp. 2d ---, 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014) ("the computerized process disclosed in the '516 Patent is invalid under § 101, under any reasonable construction. Claim construction would not assist the Court in resolving the § 101 claim of invalidity"); Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC, Civ. 12-360-M, 2012 WL 6629561, at *2 (W.D. Okla. Dec. 19, 2012), aff'd, 530 F. App'x 939 (Fed. Cir. 2013) ("there is no requirement that claims construction be completed before examining patentability").

Courts have indeed dismissed patent suits on the pleadings because the patents were ineligible under § 101. See, e.g., Lumen View Tech. LLC v. Findthebest.com, Inc., 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (granting judgment on the pleadings because "[t]he claimed process elements of Claim 1 are straightforward. No components are opaque such that claim construction would be necessary to flush out its contours"); Cardpool, Inc. v. Plastic Jungle, Inc., Civ. 12-04182, 2013 WL 245026, *3 (N.D. Cal. Jan. 22, 2013) ("[t]here is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss"); OIP Technologies, Inc. v. Amazon.com, Inc., C-12-1233, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012) ("the procedural posture of this case does not render Amazon's [12(b)(6)] motion premature").

Plaintiff also argues that the Local Patent Rules mandate a specific procedure that Defendants may not circumvent with their 12(b)(6) motion. This argument lacks merit. There is no provision in the Local Patent Rules precluding adjudication of of § 101 eligibility before formal claim construction. The Local Patent Rules of the District of New Jersey, codified at L. Civ. R. 9.3, specify the general ordering of procedures in patent cases. Significantly, the Local Patent Rules delineate procedures for the exchange of information and contentions. These procedures commence at the initial scheduling conference, see L. Civ. R. 2.1 et seq., which occurs after the filing of an initial answer, see L. Civ. R. 16.1(a)(1). If a motion to dismiss is filed, the Court must adjudicate that motion before requiring Defendants to file an answer. See Fed. R. Civ. P. 12. Thus, a Rule 12(b)(6) motion may be filed and adjudicated in a patent case before the special provisions of the Local Patent Rules are applied to the post-answer practice and procedure. Essentially, the Local Patent Rules are consistent with the Federal Rules of Civil Procedure and do not require claim construction before adjudicating a motion to dismiss addressing § 101 eligibility. If, however, claim construction is necessary to a determination of patentability, then it must occur before

the patentability issue can be determined, presumably as a summary judgment motion.

Moreover, the Local Rules "supplement the Federal Rules of Civil Procedure . . . and are applicable in all proceedings when not inconsistent therewith." L. Civ. R. 1.1(a). The Federal Rules of Civil Procedure permit early dismissal of complaints that fail to state claims upon which relief can be granted, and before an answer has been filed or discovery has been exchanged. The Local Patent Rules do not supersede the Federal Rules of Civil Procedure.

**2. Claim Construction Is Advisable Here**

Even though neither the Federal Rules of Civil Procedure nor the Local Rules require claim construction before adjudicating subject matter eligibility, the Court still finds it advisable here. The Federal Circuit cautioned that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." Bancorp, 687 F.3d at 1273-74.

If the Court is going to invalidate the '908 Patent on subject matter eligibility grounds before claim construction, then Defendants must "establish that the only plausible

construction [i]s one that, by clear and convincing evidence render[s] the subject matter ineligible (with no factual inquiries) . . . ." Clear with Computers, LLC v. Dick's Sporting Goods, Inc., --- F. Supp. 2d ---, Civ. 12-674, 2014 WL 923280, *3 (E.D. Tex. Jan. 21, 2014). Alternatively, the Court may "adopt[] a construction most favorable to the patentee . . . ." Id. (quotation omitted). See also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, Civ. 12-2501, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013) (in adjudicating 12(b)(6) motion, noting that "in the current procedural posture, the Court must adopt a construction of the claims most favorable to the patentee") (quotation omitted).

In UbiComm, LLC v. Zappos IP, Inc., Civ. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013), the district court granted a 12(b)(6) motion to dismiss and rejected the plaintiff's argument that the "lack of an evidentiary record, together with the application of the strong presumption of patentability to claimed subject matter and the high bar required by Rule 12(b)(6) by themselves provide ample justification for denying Defendant's Motion." Id. at *6 (quotation omitted). The UbiComm case is different from the present case because the UbiComm plaintiff submitted its proposed claim constructions at the district court's request, and the district court used those

proposed constructions in conducting the § 101 eligibility inquiry. Id. at *3 n.2, *6 n.6. Furthermore, "[a]t oral argument, . . . Plaintiff stated that the case was 'teed up for decision.'" Id. at *6.

Some courts have chosen to deny motions to dismiss without prejudice to refiling the motion after claim construction. For example, in Zillow, Inc. v. Trulia, Inc., Civ. 12-1549, 2013 WL 4782287, at *7 (W.D. Wash. Sept. 6, 2013), the district court held that "going through the claim construction process (although not always required) may assist the court" and "[i]t is entirely possible that following such a hearing, the court will be convinced that the claims at issue do recite patentable subject matter." Admittedly, the Zillow court relied on the Ultramercial decision, which has since been vacated, but its reasoning was sound. In Sandborn v. Avid Tech., Inc., Civ. 11-11472, 2013 WL 4784265, at *5 (D. Mass. Sept. 5, 2013), the district court denied a motion for judgment on the pleadings because "Defendant has not clearly established, at least at this stage, that the only plausible construction of the patented claims results in an unpatentable mental process, nor has it clearly established that no construction of the term could provide sufficient limitations on the abstract concept. Taken in the light most favorable to the plaintiff, it is not clear that

the claims necessarily constitute mental processes or abstract ideas." The Sanborn court concluded that "[t]he question of what limitations are, or are not, included in the claim terms is . . . inherently tied up with the process of claim construction. Because this Court has not engaged in any claim construction, it cannot make any final determination as to whether the terms of the claims are sufficiently restricted to an application of an abstract idea, rather than an abstract idea itself." Id. at *6.

Plaintiff asserts that claim construction will conclusively establish subject matter eligibility because "once this process is performed, it would be apparent that the claims of the '908 Patent are not abstract, are tied to a specifically programmed computer rather than a general-purpose computer, and are patent-eligible." (Pl. Opp'n at 6-7.) Plaintiff argues that the Court must construe many terms, such as program codes, compressed format, user transfer field, and message, to understand the basic character of the '908 Patent before assessing subject matter eligibility. Plaintiff has not provided proposed constructions and has no obligation to do so at this time.[3] In

[3] In Plaintiff's initial letter asking the Court to adjourn Defendants' motion, Plaintiff construed the term "message" to mean "a special kind of electronic communication that has multiple attributes that provide advantages over the prior art and which cannot be executed by a human." [Docket Item 38 at 3.] In its opposition brief, Plaintiff stated that it "is not yet

Cyberfone Sys., LLC v. CNN Interactive Grp., Inc., 558 F. App'x 988, 992 n.1 (Fed. Cir. 2014), the Federal Circuit discarded the plaintiff's argument that "claim construction must precede the § 101 analysis" because the plaintiff "d[id] not explain which terms require construction or how the analysis would change." In this case, Plaintiff has identified at least some terms that must be construed and, while Plaintiff has not offered much description of how construing those claims would change the analysis, this case is at a much earlier procedural posture than CyberFone was. In CyberFone, the subject matter eligibility inquiry occurred after discovery was "underway," pursuant to a motion for summary judgment. CyberFone Sys., LLC v. Cellco P'ship, 885 F. Supp. 2d 710, 711 (D. Del. 2012).

Fundamentally, to find lack of patent eligibility as a matter of law, the Court must ensure that Defendants have shown by clear and convincing evidence either that no plausible construction of Plaintiff's claims would satisfy the

---

prepared to offer its specific proposed claim construction" but noted that the "'message' recited in the claims need to satisfy a host of conditions, which do not apply to typical e-mails and never apply to paper messages" because "the claims require that the 'message' include a plurality of information records from a database." (Pl. Opp'n at 7.) At oral argument, Plaintiff argued that it had not submitted any proposed claim constructions and that its discussion of the term "message" merely gave life and breadth to the term.

abstractness test or that the constructions most favorable to Plaintiff would not satisfy the test. It appears that, as in UbiComm, the best way for a court to apply constructions most favorable to the plaintiff is to apply the plaintiff's proposed constructions. See also, Gametek LLC v. Zynga, Inc., Civ. 13-2546, 2014 WL 1665090, at *3 (N.D. Cal. Apr. 25, 2014) ("When a § 101 motion is brought, as here, before formal claim construction, the court will adopt the patentee's proffered construction.")

Here, Plaintiff has not submitted its proposed constructions, and the Court is reluctant to presume, sua sponte, the constructions that would be most favorable. As discussed further infra, Defendants forcefully argue that the '908 Patent would fail the Alice abstractness test, but Defendants' arguments rely on interpreting the '908 Patent's claims and stripping away generic language. It is difficult to prove a negative, i.e., to show that no plausible construction exists, but that is the burden that Defendants bear at this procedural posture.

Importantly, the parties have not agreed about claim constructions, in contrast to some of the core precedents regarding § 101 eligibility, discussed infra, in which there were no disputes about claim construction. See, e.g., In re

Bilski, 545 F.3d 943, 951 (Fed. Cir. 2008), aff'd but criticized sub nom. Bilski v. Kappos, 130 S. Ct. 3218 (2010) ("Although claim construction, . . . is an important first step in a § 101 analysis, . . . there is no claim construction dispute in this appeal"); CLS Bank Int'l v. Alice Corp. Pty. Ltd., 717 F.3d 1269, 1275 (Fed. Cir. 2013) ("The district court did not conduct claim construction before reaching the merits of the § 101 issue, but the parties agreed for purposes of deciding their summary judgment motions that Alice's claims should all be interpreted to require a computer including at least 'a processor and memory.'").[4]

Congress has mandated that "[a] patent shall be presumed valid . . . ." 35 U.S.C. § 282(a). "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." State Contracting & Eng'g, 346 F.3d at 1067. Given the density of the '908 Patent with its 100 claims, the statutory presumption of validity, the "clear and convincing" evidentiary burden, and the lack of Plaintiff's proposed constructions or any agreement about claim construction, the

[4] The Court will discuss the Bilski and Alice Supreme Court decisions infra, but the Federal Circuit decisions provided the procedural history regarding claim construction.

Court finds it is advisable to postpone adjudication of the '908 Patent's eligibility under the abstractness test. Defendants' motion will be denied without prejudice to their right to raise their abstractness arguments again after claim construction, or at an appropriate earlier time.[5]

**B. Abstract Idea Analysis**

Although Defendants' motion will be denied without prejudice, the Court can address some of the parties' arguments to streamline the issues before they are argued again.

**1. Abstract Idea Exclusion From Patent Eligibility**

Congress has specified that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101. "Excluded from such patent protection are laws of nature, natural phenomena, and abstract ideas." Diehr, 450 U.S. at 185. In other words, "any invention within the broad statutory categories of § 101 that is

[5] The issue of abstractness of the '908 Patent could be revisited prior to the outcome of the Markman hearing. If Defendants elicit Plaintiff's proposed constructions of the terms that Plaintiff has denoted as carrying a special meaning in its '908 Patent, such as by contention interrogatories narrowly tailored to this purpose, and if Defendants accept and apply those constructions in their renewed 12(b)(6) motion or a summary judgment motion, it may be possible to resolve this issue by dispositive motion.

made by man, not directed to a law of nature or physical phenomenon, and not so manifestly abstract as to preempt a fundamental concept or idea is patent eligible." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1331 (Fed. Cir. 2012) (emphasis in original).

Defining "abstractness" is difficult because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012). The abstract-idea exception precludes patents that "would pre-empt use of [a particular] approach in all fields, and would effectively grant a monopoly over an abstract idea." Bilski v. Kappos, 130 S. Ct. 3218, 3231 (2010). For example, "[a] mathematical formula as such is not accorded the protection of our patent laws, and this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." Diehr, 450 U.S. at 191 (citations omitted). "Similarly, insignificant post-solution activity will not transform an unpatentable principle into a patentable process." Id. at 191-92. "[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas . . . ." CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1371 (Fed. Cir. 2011).

By contrast, "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." Diehr, 450 U.S. at 187 (emphasis in original).

**2. The Alice Decision**

The Supreme Court examined the abstract-idea exception in Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), particularly as that exception applies to computer-implemented schemes, and clarified the test that courts must apply.

In Alice, the Supreme Court evaluated patents that disclosed a computer-implemented scheme for mitigating settlement risk by using a third-party intermediary. The Alice patent claims involved using a computer system as a third-party intermediary to "create[] 'shadow' credit and debit records (i.e., account ledgers) that mirror the balances in the parties' real-world accounts at 'exchange institutions' (e.g., banks)"; "update[] the shadow records in real time as transactions are entered"; and "instruct[] the relevant financial institutions to carry out the 'permitted' transactions in accordance with the updated shadow records . . . ." Id. at 2352.

The Supreme Court considered whether the Alice patents were directed to a patent-ineligible, abstract idea. The Supreme Court noted that "we tread carefully in construing this

exclusionary principle lest it swallow all of patent law." Id. at 2354. "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept. [A]pplication[s] of such concepts to a new and useful end . . . remain eligible for patent protection." Id. (citations and quotations omitted). The Supreme Court cited Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1303 (2012), to explain that "in applying the § 101 exception, we must distinguish between patents that claim the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible invention." Id. (citations and quotations omitted).

The Supreme Court identified a two-part analysis for distinguishing patents that claim abstract ideas from those that claim patent-eligible applications of abstract ideas. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." Id. at 2355. "If so, we then ask, [w]hat else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Id. (citation and quotations omitted). Step two of this analysis is "a search for an

inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (quotations omitted).

The Supreme Court then applied the two-step analysis and held that the claims were drawn to the abstract idea of intermediated settlement, which is "a fundamental economic practice." Id. at 2356. Petitioner's argument that "the abstract-ideas category is confined to preexisting, fundamental truth[s] that exis[t] in principle apart from any human action" was rejected because the Supreme Court had previously held, in Bilski, that risk hedging, which is not a preexisting fundamental truth, was an abstract idea.[6] Id. at 2356. The Supreme Court concluded that "we need not labor to delimit the

---

[6] In Bilski, the Supreme Court examined a patent application "claim[ing] a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations in a discrete section of the economy." Bilski, 130 S. Ct. 3218, 3223. The application addressed "the concept of hedging risk and the application of that concept to energy markets," and the Supreme Court held that the application was not patentable because "hedging is a fundamental economic practice . . . ." Id. at 3229, 3231 (quotations omitted). Furthermore, it explained that "[a]llowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." Id. at 3231. The Supreme Court emphasized that "limiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable." Id.

precise contours of the ‘abstract ideas’ category in this case. It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in Bilski and the concept of intermediated settlement at issue here. Both are squarely within the realm of ‘abstract ideas’ . . . .” Id. at 2357.

At the second step, the Supreme Court “conclude[d] that the method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention.” Id. The Supreme Court explained that “the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer. They do not.” Id. at 2359. “[T]he function performed by the computer at each step of the process is [p]urely conventional.” Id. (quotation omitted). “Using a computer to create and maintain ‘shadow’ accounts amounts to electronic recordkeeping—one of the most basic functions of a computer. . . . The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are well-understood, routine, conventional activit[ies] previously known to the industry.” Id. (citations omitted). The Supreme Court concluded that the “method claims

simply recite the concept of intermediated settlement as performed by a generic computer." Id. at 2359. "The method claims do not, for example, purport to improve the functioning of the computer itself. . . . Nor do they effect an improvement in any other technology or technical field." Id.

The Supreme Court also concluded that the system claims failed step two of the test because "what petitioner characterizes as specific hardware—a data processing system with a communications controller and data storage unit, for example—is purely functional and generic. Nearly every computer will include a communications controller and data storage unit capable of performing the basic calculation, storage, and transmission functions required by the method claims." Id. at 2360 (quotations omitted).

The ultimate holding was that "the claims at issue are drawn to the abstract idea of intermediated settlement, and that merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." Id. at 2352.

While Alice clarified the abstractness test, it did not address the circumstances under which a district court can adjudicate subject matter eligibility at the pleading stage.

Furthermore, as noted above, the procedural circumstances of that case are inapposite here. In Alice, the parties agreed that one claim was representative of the method claims, id. at 2352 n.2, which is not the case here. In addition, as discussed supra, there were no claim construction disputes. The Court cannot fairly apply Alice, particularly at step two, by attempting to conjure up all plausible claim constructions at this pleadings stage in the absence of stipulated constructions or at least Plaintiff's proposed constructions of its own patent.

**3. The '908 Patent Is Directed to an Abstract Idea**

It is clear, at step one, that the '908 Patent is directed to an abstract idea, specifically the abstract idea of maintaining a database and updating users about new information. It "is applicable whenever a dynamic database is to be disseminated down to a regular user group, on a frequent basis." ('908 Patent col. 1 ll. 56-58.) The user interface communicates with subscriber systems to receive user input, associate records with users, amend records in response to user input, and send messages regarding the records. (Id.) The invention "addresses the need for immediate access to database records and the need to notify users of changes to database records." (Id. col. 1 ll. 46-48.) This idea is undeniably abstract. It is fundamental,

particularly in the real estate world, that companies will maintain records and databases to update users about new information. “Like the risk hedging in Bilski” and “the concept of intermediated settlement” in Alice, database management is a fundamental economic or business practice, and therefore is abstract. Alice, 134 S. Ct. at 2356.

The ‘908 Patent is similar to the patents in OIP Technologies, which “describe[d] steps such as testing prices by sending . . . messages to potential customers, . . . selecting a price at which to sell a product based on the estimated outcome, and sending a new set of messages to potential customers with the newly selected price.” OIP Technologies, Civ. 12-1233, 2012 WL 3985118, at *16 (N.D. Cal. Sept. 11, 2012) (quotations omitted). The OIP court held that “these steps describe what any business owner or economist does in calculating a demand curve for a given product” and, thus, were directed to an abstract idea. Id. at *16. Like the OIP patents, the ‘908 Patent “describe[s] what any” realtor does, i.e., updating potential buyers about properties that meet their criteria of interest.

Similarly, in Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC, Civ. 12-360-M, 2012 WL 6629561 (W.D. Okla. Dec. 19, 2012), aff'd, 530 F. App'x 939 (Fed. Cir. 2013), the district court granted the defendants’ motion to dismiss

because the patents were directed to abstract ideas. The Sinclair-Allison patents claimed “patented processes, and apparatuses, for compiling healthcare professional credentialing information and transferring said information to an application for medical malpractice insurance” and “a patented method for ensuring current information for liability insurance underwriting, wherein associated credentialing information may be updated and analyzed to determine if a policy should be underwritten or renewed.” Id. at *1. The claims were directed to abstract subject matter because “[t]he patent claims simply explain the basic concept of compiling data and recycling it for different purposes.” Id. at *4. The ‘908 Patent is, once again, similar because it “explain[s] the basic concept of compiling data” and disseminating it.

In DietGoal Innovations LLC v. Bravo Media LLC, --- F Supp. ---, Civ. 13-8391, 2014 WL 3582914, at *10 (S.D.N.Y. July 8, 2014), the Southern District of New York applied Alice and examined claims for “a process for computerized meal planning; . . . recit[ing] a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display.” The DietGoal court

held that the claims “recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences.” Id.

In Cardpool, Inc. v. Plastic Jungle, Inc., Civ. 12-04182, 2013 WL 245026, at *2 (N.D. Cal. Jan. 22, 2013), the Northern District of California held that a patent for a gift card exchange marketplace was directed to an abstract idea because “a modern computer takes the place of a more humble technology, the ledger; though the tool has changed, the activity is the same.” The computer implementation described in the ‘908 Patent is more efficient than a realtor working with paper records of client preferences and calling or mailing clients to notify them of new properties, but “though the tool has changed, the activity is the same.”

The Court therefore holds that the ‘908 Patent is directed to an abstract idea.

**4. Inventive Concept Analysis**

The difficult issue, and the one that the Court cannot fully address before claim construction, is whether the ‘908 Patent satisfies step two of the Alice analysis. At this step, the Court must “search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent

upon the [ineligible concept] itself." Alice, 134 S. Ct. at 2355 (quotations omitted). It is questionable whether the '908 Patent can satisfy this test, but it is plausible that, after claim construction, Plaintiff may be able to show that an inventive concept exists. It is clear at this time, however, that many of Plaintiff's arguments are meritless and will be rejected to streamline future abstractness arguments.

**a. A Plausible Inventive Concept**

Defendants argue that "once the generic computer jargon is stripped away, all that remains is an abstract idea that could be carried-out with paper, pen and human thoughts and motions." (Def. Br. at 12.) At oral argument, they contended that certain terms that the Supreme Court declared generic in Alice were equivalent to terms in the '908 Patent, such as "data processing system" in Alice and "remotely updatable database system" in the '908 Patent. Without claim construction, agreement between the parties, proposals from Plaintiff, or an evidentiary record, the Court cannot assume the meaning of the '908 Patent's claim terms.

At oral argument, Plaintiff asserted that the '908 Patent claims a specific computerized method, an inventive and unique combination of connecting database parts, user records, user interfaces, and server signals to allow databases to function

more efficiently. It is possible that, after claim construction, Plaintiff may be able to show that an inventive concept exists. The Court cannot, of course, identify such a plausible construction, if any, on Plaintiff's behalf. During the claim construction process, the parties bear the burden of identifying claim terms and proposing constructions. See, e.g., L. Pat. R. 4.1(a) ("each party shall serve on each other party a list of claim terms which that party contends should be construed by the Court"); L. Pat. R. 4.3(a) (joint claim construction statement shall contain "[e]ach party's proposed construction of each disputed term").

"[T]he determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." Bancorp, 687 F.3d at 1273-74. Absent claim construction, or at least the Plaintiff's proposed constructions of pertinent terms,[7] that "full understanding" is lacking here. At this time, therefore, the Court cannot assess Defendants' argument that the '908 Patent solely consists of generic, conventional computerized steps that could be performed by a person with organized records. The Court can, however, address

[7] See n.5, supra.

some of Plaintiff's meritless arguments to streamline the issues.

**b. Figures Do Not Establish Inventive Concept**

The Court can dispense with Plaintiff's argument that the '908 Patent's figures show the inventive concept. When asked to articulate why the claimed invention did not rely on generic program codes and what its limitations were, Plaintiff's counsel cited figures from the '908 Patent and explained that these figures explain to a skilled programmer how the invention combines the various computer elements and operates in a specific way. Plaintiff argued that the '908 Patent's figures would guide programmers to develop the specified invention. Plaintiff cannot rely on the '908 Patent's figures to establish subject matter eligibility.

The '908 Patent states: "While specific embodiments of the invention have been described and illustrated, such embodiments should be considered illustrative of the invention only and not as limiting the invention as construed in accordance with the accompanying claims." ('908 Patent, col. 24 ll. 34-38.) The District of Delaware has held that, when a patent contains such a disclaimer, the patentee cannot cite to the specification as evidence of meaningful limitations: "the patent's specification explicitly states that, 'The invention is . . . not limited by

the description contained herein or by the drawings, but only by the claims.' Therefore, while specific examples are described in the specification, they do not act to further limit the claims and therefore do not make the abstract idea of a conditional action patentable." UbiComm, 2013 WL 6019203, at *5 (citation to patent omitted). The UbiComm court relied on Liebel-Flarsheim Co. v. Medrad, Inc., in which the Federal Circuit held that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." 358 F.3d 898, 906 (Fed. Cir. 2004) (quotation omitted). The '908 Patent expressly disclaims any limitation based on specification or illustrations and, therefore, the Court will look only to the '908 Patent's claims in conducting the subject matter eligibility inquiry.

**c. Application to Real Estate Field Is Insufficient**

The Court will also discard Plaintiff's argument that the '908 Patent's focus on the real estate field suffices to establish subject matter eligibility. The '908 Patent is directed specifically to the real estate field, but that subject matter focus is not a meaningful limitation. "[L]imiting an

abstract idea to one field of use . . . d[oes] not make the concept patentable.” Bilski, 130 S. Ct. at 3231.

**d. Enhanced Efficiency or Speed Is Insufficient**

Plaintiff also asserts that the ‘908 Patent remedies inefficiencies and specifies a system capable of automatically organizing and updating millions of records and users. The ‘908 Patent may remedy inefficiencies, but that fact does not establish subject matter eligibility: “In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . .” SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1333 (Fed. Cir. 2010); see also Content Extraction, 2013 WL 3964909, at *12 (“the mere use of a computer to more quickly and efficiently . . . accomplish a given task does not create meaningful limitation on an otherwise abstract and wide-ranging concept”); CyberFone Sys., LLC v. Cellco P'ship, 885 F. Supp. 2d 710, 719 (D. Del. 2012) (patents were invalidly abstract because “[e]ssentially plaintiff has claimed nothing more than the idea of sorting via machine”).

**e. Numerosity of Claims Does Not Show An Inventive Concept**

Plaintiff argues that "[t]he '908 Patent includes 30 pages of figures, 12 pages of written description, and 100 claims of various scope that, together, describe in detail a computer system that is specifically programmed to perform useful functions." (Pl. Opp'n at 1.) The number of figures and claims standing alone does not establish subject matter eligibility. The Supreme Court has cautioned that the "determination of patentable subject matter" may not "depend simply on the draftsman's art." Parker v. Flook, 437 U.S. 584, 593 (1978); see also Diehr, 450 U.S. at 192 (the court may not "allow a competent draftsman to evade the recognized limitations on the type of subject matter eligible for patent protection").

In sum, Defendants have argued that the '908 Patent is invalidly abstract. As discussed supra, for the Court to hold that the '908 Patent fails the Alice test, there must be clear and convincing evidence that every claim, including each independent claim, is invalidly abstract under any plausible construction. The present record does not enable the Court to determine whether Defendants have satisfied this burden, but they have shown that Plaintiff cannot satisfy the Alice test by citing the '908 Patent's figures, limiting its application to

the real estate field, emphasizing the speed and efficiency of the system, or stressing the number of claims. What must be determined, in due course, is whether the '908 Patent has elements sufficient to "transform the [abstract] nature of the claim into a patent-eligible application." Alice, 134 S. Ct. at 2355 (quotation omitted).

## V. CONCLUSION

The Court will deny Defendants' motion to dismiss without prejudice. At this procedural posture, the Court cannot hold that Defendants have shown by clear and convincing evidence that no plausible construction of the '908 Patent's claims will satisfy the Alice test for patentability. As discussed supra, for the Court to hold that the '908 Patent fails the Alice test, there must be clear and convincing evidence that every claim is invalidly abstract and contains only generic computer applications under any plausible construction of all claims. Defendants have not yet satisfied this burden. This issue may be revisited upon completion of claim construction, or at an earlier stage when Plaintiff provides its proposed constructions of terms if Defendants accept those constructions for purposes of non-patentability analysis.

In order to address the issues that are ripe for adjudication now, the Court will hold, however, that the '908

Patent is directed to an abstract idea of maintaining a database and updating users about new information, for purposes of part one of the Alice test, and further that Plaintiff cannot satisfy part two of the Alice test by merely citing the '908 Patent's figures, limiting its application to the real estate field, emphasizing the speed and efficiency of the system, or stressing the number of claims. The Court has considered Defendants' arguments, but step two of the abstractness issue is not yet ripe for adjudication. The accompanying order will be entered.

**August 19, 2014**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge